ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| WALTER CORTÉS PÉREZ Y OTROS<br><br>RECURRENTE<br><br>V.<br><br>MUNICIPIO DE MOROVIS<br><br>RECURRIDO | KLRA202300318<br><br><br><br><br><br><br><br>Consolidado con: | *REVISIÓN ADMINISTRATIVA* procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm.:<br>2017-07-0085<br><br>Sobre:<br>Retribución |
| CRISTIAN J. SEPÚLVEDA CLASS Y OTROS<br><br>RECURRENTE<br><br>V.<br><br>MUNICIPIO DE MOROVIS<br><br>RECURRIDO | KLRA202300319 | *REVISIÓN ADMINISTRATIVA* procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm.:<br>2017-07-0086<br><br>Sobre:<br>Retribución |

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de octubre de 2023.

Walter Pérez Cortés (señor Pérez Cortés) y otros;[1] y Cristian J. Sepúlveda Class (Señor Sepúlveda Class) y otros,[2] (denominados en conjunto "recurrentes") presentaron dos *Recursos de Revisión Administrativa* solicitando que revoquemos las *Resoluciones* emitidas por la Comisión Apelativa del Servicio Público (CASP o Comisión) el 21 de abril de 2023. En los aludidos dictámenes la Comisión declaró *No Ha Lugar* las *Apelaciones* instadas por los recurridos tras resolver que el aumento salarial reclamado por los empleados del Municipio de Morovis no procedía. Mediante nuestra *Resolución* del 11 de julio de 2023, ordenamos la consolidación de los recursos.

---
[1] KLRA202300318.
[2] KLRA202300319.

Número Identificador
SEN2023 _____

Por los fundamentos que expondremos a continuación se *confirman* las determinaciones recurridas.

I

En aras de comprender los planteamientos ante nuestra consideración, conviene establecer algunos antecedentes fácticos que no están en controversia y que surgen de los expedientes administrativos objetos de revisión.

El 7 de junio de 2007, se emitió la *Resolución Núm. 61, Serie 2006-2007* (*Resolución Núm.61*) del municipio de Morovis (Municipio o recurrido) titulada *Para disponer y aprobar el presupuesto funcional de ingresos y egresos que ha de regir durante el año económico 2007-2008 en el Municipio de Morovis, Puerto Rico; para autorizar al director de Finanzas a registrar lo dispuesto en esta Resolución en los libros de contabilidad y el sistema mecanizado de contabilidad a su cargo; y para otros fines.* En lo aquí pertinente, la referida resolución dispuso lo siguiente:

> SECCIÓN 3RA: Autorizar mediante el Presupuesto Funcional 2007-2008, como por la presente sección se autoriza, la vigencia del aumento al Salario Mínimo Federal en el Municipio de Morovis a partir del 1 de julio de 2007 de $5.15 a $5.85 por hora.
>
> SECCIÓN 4TA: Autorizar al Alcalde, como por la presente sección se autoriza, a recomendar los mecanismos y procesos necesarios a recogerse en un reglamento a ser sometido para la aprobación de este cuerpo y; establecer el pago de salarios del Municipio de Morovis de forma bisemanal a partir del 1 de enero de 2008 y años subsiguientes, disponiéndose que el salario actual por año del Alcalde será distribuido en un total de 26 pagos al año.
>
> SECCIÓN 5TA: Autorizar al Director de Finanzas a crear un fondo especial intitulado "Desarrollo de Eventos y Facilidades Deportivas" mediante la transferencia de la asignación dispuesta en la partida 01-09-05-9481, Celebración Caribe Basket.
>
> SECCIÓN 6TA: Autorizar al Director de Finanzas a transferir al fondo especial existente intitulado "programa de Reciclaje Municipal" la cantidad dispuesta en la partida 01-10-45-99.01, Programa de Reciclaje. (Énfasis nuestro).[3]

---

[3] Véase *Resolución Num.61* en *Apéndice* del *Recurso de Revisión* KLRA202300318, págs. 61-63.

A partir de enero de 2008 el Municipio comenzó a pagar de manera bisemanal a los empleados municipales.[4]

El 7 de junio de 2017, la entonces alcaldesa del Municipio, Carmen I. Maldonado González, notificó todo el personal municipal una carta titulada *Método y Frecuencia de Pago de Nómina Bisemanal*. En ésta informó que al realizarse el cambio del método de pago de uno quincenal a uno bisemanal en el 2008, se cometió un error de cálculo consistente en computar el sueldo anual a base de trece (13) meses de salario, en lugar de computarlo a base de doce (12) meses, lo que provocó que se pagara un salario indebido. Por ello, dispuso como medida correctiva, continuar realizando los pagos de forma bisemanal, pero utilizando el computo correcto a base de doce (12) meses a partir del 18 de junio de 2017. Por su pertinencia a los casos de epígrafe transcribimos a continuación la referida misiva:

> Saludos cordiales. Como es de su conocimiento para el 1 de enero de 2008 se cambió el método y la frecuencia de pago de salarios en el Municipio de Morovis de quincenal a bisemanal.
>
> No obstante, es mi obligación notificarles que en el momento en que se realizó tal cambio en el Municipio, la fórmula utilizada para calcular la cuantía del pago bisemanal fue una errónea. Entre finales del año 2007 y comienzo del 2008, al calcular los pagos bisemanales, realizaron el cómputo basándose en un sueldo anual constituido por trece (13) meses de salario. Luego de una investigación exhaustiva que incluyó una consulta legal a la Oficina de la Contralora de Puerto Rico, esta concluyó que el cálculo correcto debió haber sido computar a base de los doce (12) meses que constituyen un año natural. En palabras de la Contralora Yasmín M. Valdivieso "el cómputo correcto debió haber sido entre 12 meses, le corresponde al Municipio evaluar y determinar las medidas administrativas o correctivas que puede tomar para corregir esta situación".
>
> La fórmula erróneamente utilizada desde el año 2008 fue la siguiente:
>
> - Sueldo Mensual del Empleado se multiplicó por trece (13) meses en lugar de los doce (12) meses que constituye un año. Luego, el total de los trece (13) meses se dividió entre veintiséis (26) bisemanas que contiene un año. Ese total constituyó el pago bisemanal, erróneamente calculado, provocando un pago en exceso del salario de su plaza.

---

[4] Véase *Oposición a Solicitud de Sentencia Sumaria* en *Apéndice* del *Recurso de Revisión* KLRA202300319, pág. 65.

La Contralora en su opinión consultiva cita la Carta Circular 2002-03 de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura ("ASR") del 1 de marzo de 2002 titulada *Aplicación Correcta Descuento Retiro.* En la misma se explica la fórmula a utilizar para el descuento adecuado de la aportación al Sistema de Retiro cuando el pago de salario es bisemanal. A esos fines, se dispone que el sueldo mensual debe ser multiplicado por 12, no 13 meses, y luego ese cómputo anual dividido entre 26 bisemanal. La fórmula correcta que debió ser utilizada para la conversión del pago quincenal a bisemanal se detalla a continuación.

- Sueldo Mensual del Empleado se multiplica por doce (12) meses, eso es lo que constituye un año. El total de los doce (12) meses se divide en 26 bisemanal que contiene un año. Ese total es el que constituye el pago bisemanal correcto.

Como mencioné anteriormente, tan pronto nos percatamos sobre este asunto, solicitamos a la Oficina de la Contralora de Puerto Rico nos orientara en cuanto al tema de la fórmula utilizada para el cambio de frecuencia de pago de nómina de quincenal a bisemanal.

En su respuesta la Contralora nos expresó, que no existe prohibición alguna en cuanto a cambiar o implantar un pago de salario de forma bisemanal, en vez del pago quincenal. Sin embargo, para computar la cuantía del pago a uno bisemanal, tenía que basarse la fórmula en doce (12) meses, equivalentes a un año.

El haberse utilizado una fórmula incorrecta al momento de convertir el pago de quincenal a uno bisemanal constituyó un error que motivó a que se pagara un salario indebido al personal municipal. Ese asunto tiene que ser corregido, no puede subsistir.

<u>Por consiguiente, como medida correctiva a este asunto les informo que a partir de la bisemana que comienza el 18 de junio de 2017, se continuarán realizando los pagos de forma bisemanal, ajustando la fórmula de conversión a la correcta.</u>

De tener alguna duda al respecto puede referir la misma, por escrito, a la atención de la Directora de Recursos Humanos del Municipio. (Énfasis nuestro). [5]

Luego de recibir la carta del Municipio el señor Cortés Pérez, el señor Sepúlveda Class y otros setenta y tres (73) empleados municipales presentaron sus respectivas *Apelaciones* ante la CASP el 28 de julio de 2017.[6] En lo pertinente, alegaron que el Municipio les redujo el salario sin

---

[5] Véase *Carta* en *Apéndice* del *Recurso de Revisión* KLRA202300318, págs. 105-106.

[6] La CASP consolidó en el caso *Walter Pérez Cortés y otros (7)*, caso núm. 2017-07-0085, las apelaciones de siete (7) empleados, a saber: (1) Carlos Pillot Rodríguez; (2) Beliza Andino Morales, (3) Freddie Carrión Carrión, (4) Víctor M. Otero Maldonado, (5) Ana L. Rivas Fernández; (6) María E. Arroyo Padilla y (7) Rafael A. González Robles.

También consolidó en el caso de *Cristian J. Sepúlveda Class y otros (66)*, caso núm. 2017-07-0086, las apelaciones de sesenta y seis (66) empleados, a saber: (1) Carmen L. González Quiñones; (2) Carlos Oliveras González; (3) Jesús Santiago González; (4) Kevin O. Martinez Vega; (5) Mariela Vázquez Morales; (6) Luis *E.* Torres Silva; (7) Lourdes Villareal Camacho; (8) Wilberto Alvarado Alvarado; (9) Brenda L. Torres Rivera; (10)

considerar un aumento salarial aprobado por la Legislatura Municipal en el 2008, sin llevar a cabo procedimiento administrativo o investigación alguna y violando con ello el principio de mérito y sus derechos adquiridos.

El Municipio presentó su *Contestación a solicitud de apelación* arguyendo en esencia que en el 2008 no se aprobó un aumento salarial ni se modificó el Plan de Clasificación y Retribución, sino que solo se aprobó el cambio en el método de pago de quincenal a bisemanal. Según explicó se cometió un error al realizar el cambio pues se utilizó un cómputo considerando 13 meses al año en lugar de 12 meses como correspondía, por lo que la acción tomada para corregir dicho error era correcta.

Luego de varios trámites procesales el Municipio presentó en ambos casos *Moción solicitando resolución sumaria* acompañada con varios documentos.[7] En esencia alegó que los aumentos salariales concedidos desde el 2008 mediante el cambio al método bisemanal fueron ilegales. Esto ya que conllevó el pago de un mes de sueldo adicional al salario establecido en el Plan de Clasificación y Retribución del Municipio sin que se cumpliera con el trámite de ley correspondiente para aprobar un aumento de sueldo. Sostuvo que por cuanto no había hechos en controversia procedía disponer del asunto sumariamente y desestimar las apelaciones.

---

Aníbal Rivera Alvarado; (11) Jesús M. Rodríguez Ojeda; (12) José L. Collazo Olivo; (13) Francisco J. Torres Pagán; (14) José De León Ortega; (15) Edwin Ojeda Fernández; (16) Carmen O. Rodríguez Rivera; (17) Lisbeth Rodríguez Castro; (18) Eugenio Figueroa Morales; (19) Carlos Rivera Rivera; (20) Edward Rodríguez Sánchez; (21) Víctor J. Díaz Santiago; (22) Verónica Torres Rodríguez; (23) Edwin Martínez Torres; (24) Carlos A. Díez Rolón; (25) Julio V. Morales Rodríguez; (26) Juan F. Rodríguez Flores; (27) Lennin Vázquez Fontán; (28) Juan T. Rivera Santos; (29) Irma I. Sostre Torres; (30) Juan C. Cortés Albaladejo; (31) Severiario Rodríguez Laureano; (32) Teresita Cruz Meléndez; (33) Yacelie Russe Santiago; (34) Betsy I. Rosado Velázquez; (35) Manuel Rodríguez Marrero; (36) Abigail Ocasio Vega; (37) Daniela Chévere Dávila; (38) Kristy Rodriguez Santiago; (39) Janet Pérez Cruz; (40) Sophy Vélez Marrero; (41) Damaris Marrero Colón; (42) Lissette Guzmán Torres; (43) Noel Diaz Meléndez; (44) José A. Marrero Rivera; (45) Luis A. Rivera Carrión; (46) Brenda L. Pagán Rivera; (47) Maricelis Ojeda Otero; (48) Rosarito Rosado Rosario; (49) Nancy Otero Pérez; (50) Nilda Z. Castellano Negrón; (51) Víctor M. Negrón Jiménez; (52) Eugenio Martinez Rodríguez; (53) Millie Ocasio Caraballo; (54) Glenda Otero Rosado; (55) Marilyn Matos Ramírez; (56) Griselle Negrón Nazario; (57) Ana I Noriega Robles; (55) Héctor R. Santos Rivera; (59) Moraima Diaz Soto; (60) Víctor Pérez Fernández **;** (61) Rubén Rodríguez Rodríguez; (62) Ernesto Vázquez Barreto; (63) Ernesto Santos Nieves; (64) René Otero Torres; (65) Rosa O. Rivera Torres; y (66) Eileen Chéverez Rivas.

[7] En el caso *Walter Pérez Cortés y otros* presentó, entre otros documentos, la *Resolución Núm. 61.* En el caso de Cristian J. Sepúlveda Class y otros presentó, entre otros documentos, la Carta del 21 de marzo de 2017, suscrita por la Alcaldesa, Carmen Maldonado González, y dirigida a la contralora; Carta del 5 de mayo de 2017, dirigida a la alcaldesa y suscrita por la Contralora.

Por su parte, los apelantes presentaron en ambos casos su correspondiente *Oposición a solicitud de sentencia sumaria* acompañada de varios documentos.[8] En esta, alegaron que existía controversia en torno a los hechos planteados por el Municipio como incontrovertidos. Sin embargo, solicitaron que se resolviera el asunto sumariamente a su favor por no existir controversia en cuanto a que la *Resolución Núm. 61* incluía un aumento salarial a ser efectivo desde 1 de enero de 2008.

Consideradas las comparecencias de las partes la Oficial Examinadora a cargo de ambos casos emitió los *Informes* correspondientes recomendando al panel a cargo a disponer sumariamente de las apelaciones y declararlas sin lugar. Esto ya que, según concluyó, de los documentos admitidos no surgía el aumento de salario alegado por los apelantes, pues solo se desprende que la Legislatura Municipal autorizó la aprobación del pago de nómina bisemanal y ordenó al alcalde a crear los procedimientos pertinentes para que dicho método de pago diera inicio el 1 de enero de 2008. A su vez razonó que el Municipio realizó pagos por una cuantía mayor a su obligación de pago debido a que al convertir el pago de nómina a bisemanal cometió un error de cómputo consistente en multiplicar el salario anual de los empleados por trece meses previo a dividirlo por las 26 semanas que tiene el año. En consecuencia, determinó que tratándose de un error de hecho, se cumplían los elementos de la doctrina de cobro de lo indebido por lo que procedía el recobro.

El 21 de abril de 2023 el panel de la CASP emitió *Resoluciones* finales en ambos casos en las que acogió las recomendaciones sometidas por la Oficial Examinadora y declaró *No Ha Lugar* las apelaciones. El 11 de mayo de 2023, los apelantes presentaron *Moción de Reconsideración.* No obstante, la CASP no actuó en torno a la reconsideración dentro de los 15

---

[8] Entre otros documentos, presentaron el *Mensaje de presupuesto 2007-2008* del entonces alcalde, Heriberto Rodríguez Adorno; Acta de la Continuación de Sesión Ordinaria de la Legislatura Municipal del 6 de junio de 2007.

días dispuestos en el Art. 14 del Plan de Reorganización Núm. 2-2010, 3 LPRA Ap. XIII.

El 26 de junio de 2023 los apelantes presentaron de manera oportuna los recursos de *revisión judicial* que nos ocupan alegando que la CASP erró en lo siguiente:

> PRIMER ERROR: Erró la Comisión Apelativa del Servicio Público al concluir que de la *Resolución Núm. 61,* Serie 2006-2007, del 6 de julio de 2006, no surge el aumento de sueldo aprobado para los Recurrentes.

> SEGUNDO ERROR: Erró la Comisión Apelativa de Servicio Público al no conceder el remedio solicitado por los recurrentes de que se les reconociera el aumento concedido desde el año 2008.

En sus recursos los aquí recurrentes alegaron que del trámite legislativo de la *Resolución Núm. 61* surge que la intención legislativa, tanto del Alcalde como de la Legislatura Municipal, era que los empleados municipales gozaran de un aumento salarial cuando se cambió la frecuencia de pagos de un sistema quincenal (24 pagos) a uno bisemanal (26 pagos). Argumentaron que dicha intención surge del *Mensaje de Presupuesto* ofrecido por el Alcalde en el 2007 y del *Acta* de la Continuación de la Sesión Ordinaria de la Legislatura Municipal del 6 de junio de 2007, durante la cual se discutió el presupuesto propuesto por el Alcalde para el año fiscal 2007-2008. A su juicio, en la medida que el Alcalde propuso y la Legislatura Municipal aprobó, que los 26 pagos bisemanales serían por la misma cantidad que los 24 pagos que se realizaban quincenalmente, recibieron un aumento equivalente a un mes de trabajo. De otro lado, sostuvieron que el estatuto aplicable faculta a los Municipios a otorgarle aumentos salariales a sus empleados con aprobación de sus legislaturas municipales mas no exige acción posterior para otorgarle efectividad a los aumentos aprobados.

A solicitud de los recurrentes ordenamos la consolidación de los recursos.[9] Así las cosas, el Municipio presentó su *Alegato en oposición al*

---

[9] Véase nuestra *Resolución* del 14 de julio de 2023.

*recurso de revisión consolidado* el 26 de julio de 2023. En este sostuvo la procedencia de la determinación de la CASP pues a su juicio, de la *Resolución Núm. 61* no surge el aumento de salario alegado. Solo surge que la Legislatura Municipal autorizó la aprobación del pago de nomina bisemanal y ordenó al alcalde a crear los reglamentos pertinentes para que dicha manera de pago diera inicio el 1 de enero de 2018. Según abundó, ni siquiera existe reglamento alguno sometido por el alcalde y aprobado por la Legislatura Municipal estableciendo los procesos necesarios para dicho cambio. También planteó que un aumento de sueldo general para los empleados municipales únicamente puede concederse mediante ordenanza municipal en la que se consideren el efecto del aumento en los tipos mínimos y máximos en cada escala. Por lo que no basta que el alcalde haya anunciado el aumento en su mensaje de presupuesto.

II

A.

En nuestro ordenamiento jurídico las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012). Esta norma de deferencia se basa en que las agencias son las que cuentan con conocimiento especializado en los asuntos que les han sido encomendados, así como con vasta experiencia en la implantación de sus leyes y reglamentos. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Camacho Torres v. Admin. para el Adiestramiento de Futuros Empresarios y Trabajadores*, 168 DPR 66 (2006). Es por ello que tales determinaciones tienen a su favor una presunción de legalidad y corrección que debe respetarse. *DACo v. AFSCME*, 185 DPR 1, 26 (2012); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744 (2012).

Las determinaciones finales de las agencias administrativas son revisadas en este Tribunal de Apelaciones mediante el recurso de revisión administrativa. El estándar de revisión de este tipo de recurso está fundamentado en el principio rector de la razonabilidad; es decir, se

examina que la agencia no haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía*, 196 DPR 606, 626 (2016). En este sentido, la revisión judicial se limita a examinar: 1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II*, supra, pág. 940; véase, además, Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), 3 LPRA sec. 9675.

No obstante, la deferencia judicial cede cuando la actuación administrativa es irrazonable o ilegal y ante interpretaciones administrativas que conduzcan a la comisión de injusticias. *Asoc. Fcias. V. Caribe Specialty II*, supra, pág. 941. Así, para impugnar la razonabilidad de una determinación o demostrar que la evidencia que obra en el expediente administrativo no es sustancial, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de tal evidencia. *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999). La evidencia sustancial es la prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Rolón Martínez v. Caldero López*, supra, pág. 36.

De otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno*. Rebollo v. Yiyi Motos,* 161 DPR 69, 77 (2004). Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial. *Torres Santiago v. Depto. de Justicia,* 181 DPR 969, 1002 (2011).

B.

Los municipios son entidades jurídicas creadas por la Asamblea Legislativa al amparo de la Sec. 1 del Art. VI de la Constitución de Puerto Rico, para atender las necesidades de la comunidad local. *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267, 286 (2011); *Ortiz v. Mun. de San Juan*, 167 DPR 609, 613 (2006); Art. VI, Sec. 1, Const. de PR, LPRA, Tomo 1. Es por ello que sólo poseen los poderes expresamente delegados por el legislador. *Íd.*

A tales efectos, el Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada establece como política pública del gobierno otorgar a los municipios aquellos poderes y facultades necesarias para que puedan asumir su función a favor del desarrollo social y económico de sus jurisdicciones. Art. 1.003, 21 LPRA sec. 7003.

El gobierno municipal está compuesto por el Alcalde y la Legislatura Municipal. El Alcalde es la máxima autoridad de la Rama Ejecutiva responsable por la dirección, administración y fiscalización del funcionamiento del Municipio. Art. 1.018, 21 LPRA sec. 7028. La Legislatura Municipal es por su parte el organismo responsable de ejercer las facultades legislativas conferidas por el estatuto. Art. 1.020, 21 LPRA sec. 7041.

Entre otros deberes y funciones, el Alcalde es responsable de organizar, dirigir y supervisar todas las funciones y actividades administrativas del municipio; preparar el proyecto de resolución del presupuesto general de gastos de funcionamiento del municipio; administrar el presupuesto general de gastos; dar cuenta inmediata a las autoridades competentes sobre cualquier irregularidad, deficiencia o infracción a las leyes, ordenanzas, resoluciones y reglamentos aplicables al municipio, y diseñar, formular y aplicar un sistema de administración de personal para el municipio de acuerdo con las disposiciones de esta ley y los reglamentos adoptados.  Art. 1.018, 21 LPRA sec. 7028. En particular, el alcalde deberá presentar a la Legislatura Municipal, para su aprobación, el sistema de administración de personal del municipio y el Proyecto de

Resolución de Presupuesto General de Ingresos y Gastos del Municipio para cado año fiscal. Art. 1.019, 21 LPRA sec. 7029.

A la Legislatura Municipal le corresponde, entre otras facultades y deberes, aprobar anualmente la resolución del presupuesto general de ingresos y gastos de operación y funcionamiento del municipio; aprobar los planes del área de personal del municipio que someta el alcalde y los reglamentos, las guías, la clasificación y las escalas de pago que deban adoptarse para la administración del sistema de personal. Art. 1.039, 21 LPRA sec. 7065.

Los poderes y las facultades conferidos a los municipios por el Código de Municipios Autónomos, asi como por el estatuto precedente, la Ley de Municipios Autónomos, *infra,* se interpretarán liberalmente a favor de los municipios, en armonía con la buena práctica de política pública fiscal y administrativa. Art. 1.005, 21 LPRA sec. 7005.

En lo aquí pertinente, el Capítulo 11 de la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81-1991, (Ley de Municipios Autónomos) vigente al momento de los hechos en controversia, establece las reglas que regulan la administración del personal municipal. En particular, faculta a cada municipio a establecer un sistema autónomo para la administración del personal municipal el cual se regirá por el principio de mérito.[10] Para ello los municipios deben adoptar un reglamento de Administración de Personal que contenga un Plan de Clasificación de Puestos y Retribución Uniforme para los empleados de carrera y de confianza. Art. 11.001, 21 LPRA sec. ante. 4551.

Le corresponde al alcalde establecer el plan de clasificación y retribución con la aprobación de la Legislatura Municipal. Art. 11.006, 21 LPRA sec. ante. 4556. El propósito de dicho plan es agrupar en clases aquellos puestos que sean de naturaleza similar. Art. 11.006, 21 LPRA sec. ante. 4556(b). Las autoridades nominadoras, entiéndase el alcalde o

---

[10] Se consideran esenciales al principio de mérito las siguientes áreas de la administración del personal municipal: clasificación de puestos, reclutamiento y selección, ascensos, traslados y descensos, adiestramiento, retención. Art. 11.005, 21 LPRA sec. ant. 4555.

la legislatura municipal, determinan el valor relativo en la escala de retribución de acuerdo a las clases que comprendan el plan de clasificación tomando en consideración los siguientes factores: la naturaleza y complejidad de las funciones, grado de responsabilidad y autoridad que se ejerce y que se recibe, condiciones de trabajo, riesgos inherentes al trabajo y requisitos mínimos del puesto. Art. 11.006, 21 LPRA sec. ante. 4556.

En particular, el Art. 11.015 establece las reglas que todo Municipio habrá de observar para establecer los planes de retribución de los empleados municipales. En lo aquí pertinente, el referido artículo indica lo siguiente:

Art. 11.015 – Disposiciones sobre Retribución

El alcalde preparará planes de retribución separados para los empleados de la Rama Ejecutiva del Gobierno Municipal en los servicios de carrera y de confianza. Dichos planes deberán ajustarse a la situación fiscal prevaleciente en el municipio y requerirán la aprobación de la legislatura mediante ordenanza. …

a) *Planes de retribución.* — Los planes de retribución dispondrán el tratamiento equitativo a los empleados y estimulará la máxima utilización de los recursos humanos y fiscales disponibles.

Dichos planes estipularán una escala de retribución para cada clase de puesto, que deberá consistir de un tipo mínimo y uno máximo, y todos aquellos tipos intermedios que se consideren necesarios.

Los tipos establecidos en las escalas de retribución corresponderán a un salario mensual y a una jornada regular de trabajo. Cuando en un puesto se presten servicios a base de una jornada parcial, el sueldo a fijarse será proporcional a la jornada regular de trabajo que se establezca por reglamento.

b) *Administración de los planes de retribución.* — Las autoridades nominadoras establecerán por reglamento las normas que regirán la administración de los planes del servicio de carrera y confianza. La autoridad nominadora podrá reasignar las clases a otras escalas manteniendo actualizado el Plan de Retribución para que responda a las necesidades del servicio.

c) Cuando la capacidad económica del municipio lo permita, los empleados que ocupen puestos regulares y que no hayan recibido ninguna clase de aumentos de sueldo, excepto los otorgados por disposición de una ordenanza municipal, durante un período ininterrumpido de cinco (5) años de servicios, recibirán un aumento de sueldo equivalente a un tipo o paso de la escala correspondiente. Dicho aumento de sueldo

se podrá conceder en forma consecutiva hasta que el empleado alcance el tipo máximo de la escala asignada a su puesto. La autoridad nominadora municipal podrá denegar dicho aumento de sueldo a cualquier empleado si a su juicio los servicios del empleado durante el período de cinco (5) años correspondientes no hubiesen sido satisfactorios. En tales casos la autoridad nominadora informará al empleado, por escrito, las razones por las cuales no se le concede el referido aumento de sueldo y de su derecho de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal. Art. 11.015, 21 LPRA sec. ante. 4565.

### C.

Es una norma reiterada en nuestro ordenamiento jurídico que todas las leyes, aunque sean claras, requieren interpretación. El Artículo 19 del Código Civil, 31 LPRA sec. 5341, dispone que cuando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu. Por otro lado, el Art. 20 del Código Civil, 31 LPRA sec. 5342, establece que para descubrir el verdadero sentido de una ley cuando sus expresiones son ambiguas, se considerará su razón y su espíritu, mediante la atención a los objetivos del legislador, a la causa o el motivo para dictarla. Cuando las palabras de una ley son ambiguas, su sentido debe buscarse en su espíritu o en su intención, en su contexto y en comparación con otras palabras y frases que se relacionen. Art. 23 del Cod. Civ., 31 LPRA sec. 5345.

Cónsono con lo anterior el Tribunal Supremo ha reconocido que cuando el lenguaje de una ley es claro y explícito, su texto es la expresión por excelencia de la intención legislativa y no debe ser tergiversado, malinterpretado ni sustituido. *Puerto Rico Fast Ferries, LLC v. Aut. de Alianzas Público-Privadas*, 2023 TSPR 121, 213 DPR _____; *Otero de Ramos v. Srio. de Hacienda*, 156 DPR 876 (2002). En este sentido, los tribunales sólo debemos suplir las deficiencias de un estatuto cuando sea necesario, pues no podemos usurpar la función legislativa. *Íd.* Ahora bien, cuando de cualquier modo exista ambigüedad en el texto de un estatuto,

los tribunales debemos procurar que la misma se interprete de manera tal que no produzca un resultado absurdo o contrario a su razón de ser. *Íd.*

En aquellas instancias en las que se requiere evaluar la intención legislativa podemos valernos de las siguientes fuentes: (1) el historial legislativo de la disposición objeto de controversia; (2) los datos recogidos en el informe de la comisión legislativa que estudió el proyecto de ley; (3) las expresiones que se dieron en el hemiciclo durante la sesión de aprobación del estatuto, según recogidas en el Diarios de Sesiones. *Puerto Rico Fast Ferries, LLC v. Aut. de Alianzas Público-Privadas*, supra. También resulta importante conocer el contexto histórico, cultural y social en el que se aprobó el estatuto. *Id.*

III

A.

Nuestro ordenamiento nos requiere otorgar gran deferencia a las determinaciones administrativas debido a su *expertise* sobre los asuntos que adjudican. Es por ello que nuestra revisión de las determinaciones de las agencias está limitada a examinar si están sostenidas con evidencia sustancial, si la agencia erró al aplicar la ley y si el remedio concedido fue razonable. En particular, cuando una parte interesa impugnar las determinaciones de hechos debe señalar prueba en el récord administrativo que reduzca o menoscabe el peso de la evidencia en que se basó la determinación.

En las revisiones administrativas de epígrafe los recurrentes solicitan que revoquemos la *Resoluciones* emitidas por la CASP declarando *No Ha Lugar* sus apelaciones pues según alegan, de los documentos que forman parte del expediente administrativo se desprende que la intención del alcalde y de la Legislatura Municipal era otorgarles un aumento de sueldo mediante el cambio en el método de pago de quincenal a bisemanal. Plantean que tal intención surge y del Mensaje de Presupuesto de 2007-2008 del alcalde en ese entonces y del *Acta* de la Sesión Ordinaria del 6 de junio de 2007. Por su parte, el Municipio enfatizó

que el aumento alegado no surge de la *Resolución Núm. 61* pues ésta se limita a autorizar el cambio en el método de pago de nómina. Aduce además que el referido aumento se dio como resultado de un error en el cálculo utilizado para convertir los pagos quincenales a bisemanales, por lo que no se concedió conforme a derecho.

La *Resolución Núm. 61* fue aprobada por la Legislatura Municipal y por el Alcalde el 7 de junio de 2007. La misma tenía como propósito principal aprobar el presupuesto sometido por el Alcalde el cual habría de regir el Municipio durante el año fiscal 2007-2008. En lo aquí pertinente la sección cuarta dispuso lo siguiente:

> SECCIÓN 4TA: Autorizar al Alcalde, como por la presente sección se autoriza, a recomendar los mecanismos y procesos necesarios a recogerse en un reglamento a ser sometido para la aprobación de este cuerpo y; establecer el pago de salarios del Municipio de Morovis de forma bisemanal a partir del 1 de enero de 2008 y años subsiguientes, disponiéndose que el salario actual por año del Alcalde será distribuido en un total de 26 pagos al año.[11]

Según surge de la sección objeto de controversia la Legislatura Municipal autorizó al alcalde "establecer el pago de salarios del Municipio de Morovis de forma bisemanal a partir del 1 de enero de 2008". Si bien no se dispuso el procedimiento que se utilizaría para implementar el cambio en el pago de nómina de los empleados, se autorizó al alcalde "a recomendar los mecanismos y procesos necesarios a recogerse en un reglamento a ser sometido [a la Legislatura Municipal] para aprobación". En lo concerniente al alcalde, sí se dispuso expresamente que su salario actual sería distribuido en un total de 26 pagos bisemanales al año.

El texto de la referida sección es claro y libre de ambigüedad, por lo que según las normas de interpretación que rigen nuestro ordenamiento, su texto no debe menospreciarse bajo el pretexto de cumplir con la intención de legislativa. Mediante la *Resolución Núm. 61* el gobierno municipal solamente aprobó cambiar el método de pago de nómina de

---

[11] Véase *Resolución Num.61* en *Apéndice* del *Recurso de Revisión* KLRA202300319, pág. 101.

todos los empleados municipales a uno bisemanal. No surge de la *Resolución Núm. 61* autorización alguna para que dicho cambio estuviera acompañado de un aumento de sueldo.

Si bien las normas de interpretación no nos obligan a considerar el trámite legislativo para comprender el sentido de la *Resolución Núm. 61*, revisamos el *Acta* de la Sesión Ordinaria y el Mensaje de Presupuesto del alcalde por ser parte de los documentos incluidos en los expedientes administrativos.

Durante el Mensaje de Presupuesto el Alcalde para ese entonces indicó lo siguiente:

> Contando en que entiendes claramente este mensaje, quiero decirte que encomendé al Comité de Presupuesto Municipal la materialización de las vías económicas necesarias para cumplir con lo que fue mi compromiso personal contigo. **Por lo tanto, a partir del 1 de enero de 2008, comenzarás a recibir tu salario bisemanal lo que representa un aumento promedio mensual de $80 mínimo a cada empleado.** O sea, recibirás tu salario mensual de ahora, **trece veces** cada año a la vez que el beneficio te brindará la oportunidad de planificar mejor tus finanzas. [12] (Énfasis nuestro).

Del *Acta* de la Sesión Ordinaria del 6 de junio de 2007 surge que la Legislatura Municipal continuó la discusión del presupuesto para el año fiscal 2007-2008, la cual había comenzado el día previo, y discutió el informe del contable, así como el presupuesto final. A tales efectos, revisó el presupuesto prestando atención a las partidas que habían sufrido cambios con relación al presupuesto del año anterior. En particular, se identificaron aumentos en las partidas de Obras Públicas Municipales ($410,479.5 a $477,983.50), Manejo de Emergencias ($232,141.50 a $232,609.50), Recursos Humanos ($103,900.95 a $106,976.25) y Servicios Generales Municipales ($137,806.50 a $138,148.50) debido a los ajustes realizados en los salarios de los empleados para adoptar el aumento del salario mínimo federal.[13] Según surge de la sección tercera de la *Resolución Núm. 61* este ajuste responde al aumento al salario mínimo

---

[12] Véase *Mensaje Presupuestario 2007-2008* en *Apéndice* del *Recurso de Revisión* KLRA202300319, pág. 174.
[13] Esto corresponde a la implementación en el Municipio del salario mínimo federal aprobado por el Gobierno Federal. No se trata del aumento en controversia.

federal en el Municipio de $5.15 a $5.85 por hora. Posteriormente, se discutió en detalle las secciones tercera, cuarta, quinta y sexta del Proyecto de Resolución. Al discutir la sección cuarta el Director de Finanzas para ese entonces, Luis A. Otero Arce, indicó lo siguiente:

> En el caso de la sección cuarta como también se mencionó en el mensaje de presupuesto, el establecimiento del pago del salario bisemanal en vez de quincenal que es el actual. **Precisamente por eso no hubo asignaciones de aumento general a los empleados, sino que ese aumento se hizo indirectamente mediante el establecimiento de este pago bisemanal.** Actualmente en el pago quincenal serían 24 pagos al año que recibirían los empleados y mediante el pago bisemanal serían 26 pagos al año. Lógicamente si se deja en ese caso el del Alcalde de la misma forma que de los demás empleados estaría aumentándose el salario del Alcalde por lo cual al final de la sección indica que disponiéndose que el salario actual del Alcalde que recibe actualmente por año será distribuido en un total de 26 pagos al año, o sea, que en el caso de él sí sufriría una reducción en lo que se refleja la bisemanal, pero a los efectos su salario continuará siendo el mismo.[14] (Énfasis nuestro).

Luego de analizar de manera integrada los documentos antes mencionados, es forzoso concluir que tanto el Alcalde como la Legislatura Municipal interesaban aumentar indirectamente el sueldo a los empleados municipales mediante el cambio en el método de pago de nómina, utilizando un cálculo basado en 13 meses año para la conversión de pagos de quincenal a bisemanal. Es decir, al realizar el cambio a pagos bisemanales multiplicando el sueldo mensual de los empleados por 13 en lugar de 12 meses, se añadía un mes de sueldo al salario anual de cada empleado. Es por ello que el alcalde mencionó en su mensaje de presupuesto que cada empleado comenzaría a recibir su salario actual, trece veces al año. En esa misma línea, el Director de Finanzas del Municipio indicó en la Sesión Ordinaria que no hubo asignaciones en el presupuesto para un aumento general a los empleados municipales pues el pretendido aumento se implementaría indirectamente mediante los pagos bisemanales.

---

[14] Véase *Continuación Sesión Ordinaria* en *Apéndice* del *Recurso de Revisión* KLRA202300319, pág. 154.

No obstante, el contenido de estos documentos no reduce ni menoscaba el valor de la evidencia documental que obra en los expedientes administrativos revisados y que motivó a la CASP a determinar que el aumento de sueldo reclamado por los recurrentes no surge de la *Resolución Núm. 61*. Para empezar, la intención de conceder un aumento de sueldo de manera indirecta a los empleados del Municipio no se reflejó en la *Resolución Núm. 61*, pues según vimos la Legislatura Municipal sólo autorizó al Alcalde a realizar el cambio en el pago de nómina. No dispuso el método ni el cálculo para llevarlo a cabo pues ello debía adoptarse mediante un reglamento aprobado por la Legislatura Municipal. Mucho menos dispuso de las partidas presupuestarias necesarias para sufragar el aumento de $80 en promedio prometidos por el Alcalde en su mensaje de presupuesto. Además, durante la discusión del presupuesto sometido por el Alcalde, la Legislatura Municipal no consideró ninguna partida dirigida a sufragar el alegado aumento de sueldo a todos los empleados municipales. Esto, a diferencia de las partidas identificadas para cubrir el aumento del salario mínimo federal.

De otro lado, entre los documentos considerados la Comisión evaluó la Carta enviada por la Alcaldesa del Municipio a la Oficina del Contralor de Puerto Rico, solicitando una opinión consultiva en torno al cambio en el método de pago implementado en el 2008. También consideró la Carta remitida por la Oficina del Contralor de Puerto Rico en respuesta a la solicitud de la Alcaldesa. Veamos.

El 21 de marzo de 2017 la entonces alcaldesa del Municipio, Carmen I. Maldonado González solicitó a la Oficina del Contralor de Puerto Rico una opinión legal en torno a la implementación del pago bisemanal a los empleados municipales realizada en el 2008.[15] Según indicó en su misiva, al asumir la administración del Municipio advino en conocimiento de que al establecerse la fórmula para el cómputo del pago bisemanal se cometió un error que tuvo el efecto de aumentar todos los sueldos de los empleados

---

[15] Véase *Carta* en *Apéndice* del *Recurso de Revisión* KLRA202300319, págs. 104-106.

del Municipio. Esto ya que, al cambiar la frecuencia de pago a una bisemanal se multiplicó el sueldo mensual de cada empleado por trece (13) y se dividió el resultado de esa multiplicación por veintiséis (26); cuando lo correcto era multiplicar el salario mensual por doce (12) que son los meses que tiene el año, y dividir el resultado por veintiséis (26), que son las bisemanas que tiene el año. El referido error tuvo como resultado que cada empelado obtuviera un aumento de un mes completo de sueldo anualmente. Abundó que el aumento así concedido no fue aprobado por la Legislatura Municipal ni firmado por el Alcalde. En atención a lo anterior, solicitó que, entre otras, se le respondieran las siguientes interrogantes: si el aumento salarial requería la aprobación mediante Ordenanza o Resolución de la Legislatura Municipal; si la implantación de un método de pago de nómina cuyo cálculo y efecto fue aumentar el salario a los empleados municipales fue un acto ilegal; y si el pago de un mes "trece" al salario de los empleados municipales durante un periodo de 8 años, constituyó un aumento directo o indirecto.

El 5 de mayo de 2017 la Oficina del Contralor, por conducto de la Contralora de Puerto Rico, Yesmín M. Valdivieso, remitió una carta al Municipio ofreciendo su opinión en torno a algunas de las interrogantes planteadas.[16] En particular concluyó que, si una resolución concediendo la facultad de alterar las escalas de retribución mediante un cambio en el pago de nómina tiene el efecto de aumentar el salario de los empleados, dicha acción así como las enmiendas correspondientes al plan de clasificación y retribución municipal, requerían la aprobación específica de la Legislatura. Al respecto consignó que:

> En este caso, entendemos que el hecho de que la Resolución no hiciera expresión alguna de aumento de sueldo, y que no exista evidencia que dicho aumento de sueldo fuese legislado por la Legislatura, ni aprobado por el entonces alcalde, puede ser un evento importante para que los foros correspondientes puedan discernir sobre la nulidad de dicha actuación de la pasada administración municipal. Sin embargo, faltaría probar el hecho de que, efectivamente, los aumentos de sueldo no fueron incluidos en la partida presupuestaria

---

[16] Véase *Carta* en *Apéndice* del *Recurso de Revisión* KLRA202300319, págs. 107-114.

correspondiente de acuerdo a los artículos 7.001 y 7.002 [de la Ley de Municipios Autónomos].

A su vez concluyó que el multiplicar el salario mensual por 13 meses en lugar de 12 meses fue un error de cálculo que produjo un pago indebido con un impacto abarcador, pues además de conllevar un aumento de sueldo anual, también alteró las aportaciones al retiro.[17]

En suma, de los documentos antes reseñados surge que la *Resolución Núm. 61* no dispuso un aumento de sueldo a los empleados municipales. Sin embargo, a pesar de no haber sido aprobado el referido aumento se materializó como resultado de un cálculo erróneo realizado por el Municipio al convertir los pagos quincenales en pagos bisemanales que según veremos a continuación, constituyó también una actuación *ultra vires* por parte del Municipio. En consideración a ello no vemos razón para variar la determinación de hecho realizada por la Comisión a los efectos de que de la *Resolución Núm. 61* no autoriza un aumento de sueldo para los empleados municipales.

B.

Nos corresponde ahora analizar si la CASP aplicó correctamente el derecho al concluir que el Municipio no podía conceder el aumento de sueldo otorgado. Tal cual reseñáramos, desde enero de 2008 el Municipio implementó el cambio en los pagos de nómina al sistema bisemanal y tras utilizar un cálculo erróneo para ello, otorgó un aumento a los empleados municipales. Ahora bien, la Ley de Municipios Autónomos vigente al momento de los hechos dispone que el Alcalde es el responsable de preparar el proyecto de resolución del presupuesto general de gastos del municipio y de diseñar el sistema de administración del personal municipal para someterlos a la aprobación de la Legislatura Municipal.

En particular, su Art. 11.015 exige que todos los puestos del Municipio estén sujetos al plan de clasificación y retribución, el cual debe

---

[17] De otro lado, por falta de evidencia, se abstuvo de determinar si el referido cálculo fue un error de derecho, o un error de hecho. También se negó a responder sobre la legalidad de las actuaciones cuestionadas por entender que debían dilucidarse en otros foros con la evidencia apropiada.

ser establecido por el alcalde y aprobado por la Legislatura Municipal. Dicho plan establece la escala de retribución para cada puesto y especifica el tipo mínimo y el máximo que puede ser devengado en cada escala. El referido artículo dispone a su vez que tanto el alcalde como la Legislatura Municipal deberán establecer por reglamento las normas que regirán el plan de clasificación y retribución. De manera que, cualquier cambio en el plan de clasificación o en la retribución de los empleados municipales deberá ser propuesto por el Alcalde y aprobado por la Legislatura Municipal previo a su implementación. Así se garantiza que el gobierno municipal evalúe la viabilidad del ajuste salarial propuesto, identifique las partidas presupuestarias para sufragarlo y establezca los mecanismos para su implementación.

Considerando que el Alcalde no sometió para la aprobación de la Legislatura Municipal un plan para aumentar la retribución de los empleados municipales, asi como tampoco identificó las partidas presupuestarias para sufragarlo, resolvemos que el aumento concedido fue contrario a derecho y como tal, es nulo. Contrario a lo alegado por los recurrentes, el inciso (c) del Art. 11.015 no faculta al Municipio a conceder aumentos mediante ordenanza sin trámite ulterior. El referido artículo autoriza al Municipio a otorgar un aumento equivalente a un tipo o paso en la escala correspondiente por años de servicios a los empleados regulares cuando la capacidad económica así lo permita. No obstante, aun dicho aumento debe ser propuesto por el Alcalde y aprobado por la Legislatura Municipal.

A su vez concluimos que la CASP actuó razonablemente al denegar las apelaciones instadas por los recurrentes ya que, la acción municipal impugnada ante la Comisión no es el recobro del aumento ilegalmente otorgado desde el 2008, sino el ajuste en los salarios descontando el aumento ilegalmente concedido.

IV

Por los fundamentos antes expuestos *confirmamos* las *Resoluciones* recurridas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones